UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-24263-KING/DAMIAN

SEAN MALONE,

     Plaintiff,

vs.

MR. GLASS DOORS & WINDOWS
MANUFACTURING, LLC d/b/a
Mr. Glass Doors & Windows, and
ULISES SENARIS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' PARTIAL MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 13]

THIS CAUSE is before the Court on Defendants, Mr. Glass Doors & Windows Manufacturing, LLC, and Ulises Senaris's (collectively, "Defendants"), Partial Motion to Dismiss Plaintiff's Amended Complaint, filed February 28, 2022 (the "Motion"). [ECF No. 13]. This matter was referred by the Honorable James Lawrence King, United States District Judge, for a Report and Recommendation. [ECF No. 16]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the Motion, the parties' memoranda in response and reply [ECF Nos. 14 and 15], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. In the Motion, Defendants seek dismissal of eleven of the fourteen claims asserted in the First Amended Complaint ("FAC"). For the reasons that follow, the undersigned recommends that Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 13] be granted in part and denied in part.

## I.      BACKGROUND

On December 6, 2021, Sean Malone ("Plaintiff" or "Mr. Malone") filed this employment discrimination action against his former employer, Mr. Glass Doors and Windows Manufacturing, LLC ("Mr. Glass" or the "Company"), and the Company's president, Ulises Senaris ("Mr. Senaris"). Mr. Malone seeks damages against Mr. Glass for alleged disparate treatment based on his race and color, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1974, 42 U.S.C. §2000e-2(a) ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(a); the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01; and Section 440.205 of the Florida Statutes ("Florida's Workers' Compensation Statute"). [ECF No. 1, at ¶ 2]. He also seeks damages against Mr. Senaris, individually, pursuant to Section 1981. *Id.*

On February 4, 2022, Defendants filed an initial Partial Motion to Dismiss Plaintiff's Complaint. [ECF No. 10]. Plaintiff then filed the First Amended Complaint on February 16, 2022. [ECF No. 11 ("FAC")]. In the FAC, Plaintiff asserts fourteen (14) counts:

(I) Disparate Treatment in violation of Title VII (against Mr. Glass only);

(II) Disparate Treatment in violation of Section 1981 (against both Defendants);

(III) Disparate Treatment in violation of the FCRA (against Mr. Glass only);

(IV) Hostile Work Environment in violation of Title VII (against Mr. Glass only);

(V) Hostile Work Environment in violation of Section 1981 (against both Defendants);

(VI) Hostile Work Environment in violation of the FCRA (against Mr. Glass only);

(VII) Retaliation in violation of Title VII (against Mr. Glass only);

(VIII) Retaliation in violation of Section 1981 (against both Defendants);

(IX) Retaliation in violation of the FCRA (against Mr. Glass only);

(X) Retaliatory Hostile Work Environment in violation of Title VII
    (against Mr. Glass only);

(XI) Retaliatory Hostile Work Environment in violation of the FCRA
    (against Mr. Glass only);

(XII) Hostile Work Environment – Disability in violation of the ADA
    (against Mr. Glass only);

(XIII) Hostile Work Environment – Disability in violation of the FCRA
    (against Mr. Glass only); and

(XIV) Workers' Compensation Retaliation in violation of Fla. Stat. § 440.205
    (against Mr. Glass only).

As alleged in the FAC, Mr. Malone, who describes himself as a black, African American, non-Hispanic United States citizen, was hired by Defendants in late October 2020 as a certified forklift operator. FAC at ¶¶ 23, 27. Mr. Malone alleges that he was paid less, treated less favorably, and disciplined more severely than similarly situated non-black, Hispanic or Cuban employees during the approximately five-month period he was employed by Defendants. *Id.* at ¶¶ 6–9, 88–124.

 Specifically, Mr. Malone alleges that Defendants hired him at a pay rate of $13 per hour and promised to pay him $15 per hour after a 90-day probationary period. *Id.* at ¶ 7. However, Mr. Malone alleges Defendants continued paying him at the rate of $13 per hour after the conclusion of the probationary period but increased the hourly rates of pay of other similarly situated employees to $15 per hour at the conclusion of the probationary period. *Id.* at ¶ 29. Mr. Malone also claims that although Defendants hired him as a forklift operator, Defendants did not allow him to operate the forklifts despite the fact he was licensed to do so. *Id.* at ¶ 28. Instead, Defendants allegedly allowed other Hispanic or Cuban employees who were not licensed to operate forklifts to do so. *Id.*

Mr. Malone also alleges he was disciplined more severely than similarly situated Hispanic or Cuban employees. *Id.* at ¶ 8. He alleges that in January 2021, after he accidentally broke a few pieces of glass worth approximately $300, Defendants suspended him from work for three days without pay. *Id.* at ¶¶ 48–52. On the other hand, according to the allegations in the FAC, Defendants took no disciplinary action against two other non-black, Hispanic or Cuban employees who damaged significantly more valuable property than what Mr. Malone had damaged. *Id.* at ¶¶ 53–57.

Additionally, Mr. Malone alleges he was subjected to a hostile work environment and was retaliated against based on his race and color. *Id.* at ¶¶ 30; 125–204; 205–77. According to the allegations in the FAC, Mr. Malone's coworkers "verbally abused" him by referring to him using racial slurs and by directing disparaging remarks to him on a daily and repeated basis. *Id.* at ¶¶ 31–34. Mr. Malone also alleges the workplace contained "imagery of slavery, lynching, and the Jim Crow era," as well as drawings of "black stickmen lynched in hangman games" on supply boxes and inside bathrooms made to "target" Mr. Malone because of his race and color. *Id.* at ¶ 35. Mr. Malone alleges that despite reporting this discriminatory conduct to several of his supervisors, including the Company's president, Mr. Senaris, no one took any corrective action. *Id.* at ¶¶ 5, 36–47.

Mr. Malone also asserts retaliatory hostile work environment claims based on a disability on grounds he was allegedly denied accommodations following a workplace injury for which he filed a workers' compensation claim. *Id.* at ¶¶ 278–93. Specifically, Mr. Malone claims that in February 2021, he suffered an industrial accident and injury which required medical attention, time off from work, and weekly physical therapy sessions. *Id.* at ¶¶ 58–74. He alleges he filed a workers' compensation claim after the incident because Defendants

refused to pay him as required. *Id.* at ¶¶ 61–66. According to the allegations in the FAC, Mr.

Malone's treating physician restricted his functional activities to lifting, loading, or pushing

no more than seven to ten pounds, but Defendants required him to report to work every day

and to engage in regular work activities, including lifting, pushing, and pulling more than

seven to ten pounds. *Id.* at ¶¶ 68–74. Mr. Malone alleges Defendants terminated him on

March 19, 2021, in retaliation for his filing the workers' compensation claim. *Id.* at ¶¶ 75–78.

Mr. Malone seeks compensatory damages, including lost wages and benefits, as well

as punitive damages. *Id.* at ¶¶ 84–86.

In the Motion, Defendants seek dismissal of eleven counts of the fourteen-count FAC.[1]

Defendants argue: Counts I and III (the "Race Discrimination Claims") should be dismissed

because Mr. Malone failed to identify any similarly situated employee who was treated more

favorably [Motion at 9–13]; Counts VII and IX (the "Retaliation Claims") should be

dismissed for failure to allege any adverse employment action necessary to state *prima facie*

retaliation claims [*Id.* at 6–9]; Counts X and XI (the "Retaliatory Hostile Work Environment

Claims") should be dismissed on grounds there is no legally cognizable cause of action for

"retaliatory hostile work environment" and further because these claims are allegedly

duplicative of the hostile work environment claims asserted in Counts IV and VI (which

Defendants are not seeking to dismiss) [*Id.* at 13–14]; Counts XII and XIII (the "Disability

Retaliation Claims") should be dismissed as duplicative [*Id.*]; and Counts II, V, and VIII (the

"Individual Section 1981 Claims") should be dismissed because the FAC lacks sufficient

---

[1] As noted in the Motion, Defendants do not seek dismissal of Counts IV and VI (hostile work environment claims under Title VII and FCRA against the Company) and Count XIV (worker's compensation retaliation claim against the Company) of the FAC. *See* Motion, at 1 n.1.

factual allegations to establish that Mr. Senaris was personally involved in the alleged wrongdoing to subject him to individual liability. *Id.* at 3–6.

## II.   APPLICABLE LEGAL STANDARDS

Rule 8 of the Federal Rules of Civil Procedure is clear. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require detailed factual allegations, but "requires more than labels and conclusions . . . [and] a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

In considering Defendants' Motion to Dismiss, the Court views the FAC in the light most favorable to Plaintiff and accepts all of his well-pleaded facts as true. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). At this stage, the question for the Court is not whether Plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. *Twombly*, 550 U.S. at 563 n.8. Courts will not grant a Rule

12(b)(6) Motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46).

## III.    DISCUSSION

As discussed above, Defendants seek dismissal of eleven of the fourteen counts in the FAC. They do not seek dismissal of Counts IV, VI, or XIV. The undersigned first addresses Defendants' Partial Motion to Dismiss the claims against the Company, followed by a discussion of Defendants' arguments directed toward the claims against Mr. Senaris, individually, in Counts II, V, and VIII.

### A.    Race Discrimination Claims Against The Company (Counts I, II, and III)

In Counts I, II, and III, Mr. Malone asserts claims for race discrimination against the Company under Title VII (Count I), Section 1981 (Count II), and the FCRA (Count III). All of these claims are analyzed under the same framework. *See Bender v. Miami Shores Vill.*, 578 F. App'x 822, 824 n.2 (11th Cir. 2014) (noting the elements of a race discrimination claim under Section 1981 are the same as a Title VII disparate treatment claim and that decisions construing Title VII are appliable when considering claims brought under the FCRA, which was patterned after Title VII) (citations omitted).

The Company argues that the FAC does not set forth sufficient facts to establish *prima facie* race discrimination claims because the FAC "fail[s] to identify any similarly situated employee outside [Mr. Malone's] protected class who was treated more favorably than [he] was treated as it relates to his claims of discrimination." *Id.* at 9–13.  Mr. Malone responds that the FAC contains sufficient factual allegations exceeding Rule 8's pleading requirements

and that, in any event, whether Mr. Malone's coworkers were similarly situated for purposes of establishing a claim of race discrimination is an issue for discovery. Response at 3–5.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* race discrimination claim, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.7 (11th Cir. 2018). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Vamper*, 14 F. Supp. 2d at 1303 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). A plaintiff may establish a discrimination claim through either direct or circumstantial evidence. *Butts v. CentiMark Roofing Corp.*, No. 21-12565, 2022 WL 950938, at *2 (11th Cir. Mar. 30, 2022).

To be "similarly situated" for equal protection purposes, a plaintiff must identify a comparator and show that both are "similarly situated in all material respects, meaning that the plaintiff and comparators are sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Butts*, 2022 WL 950938, at *2 (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019)). While this standard "requires a case-by-case analysis and formal labels regarding job title are unnecessary," a similarly situated comparator will have ordinarily (1) engaged in the same basic conduct as the plaintiff; (2) been subject to the same employment policy, guideline, or rule; (3) shared the same supervisor; and (4) shared

the plaintiff's employment or disciplinary history. *Id.* "A plaintiff's failure to produce evidence showing that a single similarly situated employee was treated more favorably will preclude the establishment of a prima facie case." *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021).

The Company argues that Mr. Malone fails to allege sufficient facts to satisfy the "similarly situated" element of his *prima facie* race discrimination claims. Motion at 9–13. Review of the FAC demonstrates otherwise.

In the FAC, Mr. Malone alleges that (1) he is a member of a protected class, (2) he was qualified for the position of "certified forklift operator," (3) he suffered adverse employment actions, and (4) that other similarly situated employees were treated more favorably by the Company. FAC at ¶¶ 1–9; 27–29; 88–91. More specifically, Mr. Malone alleges he was hired around the same time, at the same rate of pay, and with the same qualifications and job title as two non-black, Hispanic or Cuban employees who were treated more favorably by the Company and paid at a higher rate after the 90-day probationary period. *Id.* at ¶ 93.

Mr. Malone also alleges that he was disciplined more severely than other similarly situated employees. *Id.* at ¶¶ 48–57. That is, Mr. Malone alleges that when he accidentally broke glass valued at $300 at Defendants' workplace, Defendants disciplined him by sending him home for three days without pay; whereas when a Hispanic employee named "Jose," who was also a forklift operator, broke about $15,000 worth of glass, Defendants failed to take any disciplinary action. *Id.* at ¶¶ 94–95; 120–21. The FAC alleges that "Jose" was similarly situated to Mr. Malone because they both "worked in the glass department" under the same supervisor named Mr. Luis. *Id.* at ¶ 95.

9

The undersigned finds the allegations in the FAC, taken as true, are sufficient to show that the comparators identified in the FAC, the two non-black Hispanics who received pay increases after the probationary period and "Jose," the forklift operator who also broke Defendants' glass, are "similarly situated" for the purpose of adequately alleging a *prima facie* race discrimination claim. *See Butts*, 2022 WL 950938, at *2. Whether Mr. Malone is able to present evidence to demonstrate that these other employees are, in fact, similarly situated is not a matter to be addressed at this stage but, instead, is "best left until after discovery." *Borgella v. Robins & Morton Corp.*, No. 21-cv-22789, 2022 WL 2104215, at *3 (S.D. Fla. June 10, 2022) (King, J.) (rejecting argument that plaintiffs' allegations do not allege similarly situated individuals because they do not demonstrate that the other workers were in the same positions as plaintiffs).

The Company also argues that the FAC "fail[s] to adequately allege that [Mr. Malone's] termination from Mr. Glass was causally related to his race and color." Motion at 12. In the FAC, Mr. Malone alleges his termination "is causally connected to his race and complaints with respect to same." FAC at ¶¶ 96–97, 122–23. The FAC is replete with allegations that Mr. Malone was discriminated against because of his race. *See, e.g.*, FAC at ¶ 3 ("the Company's agents began referring to Malone [with a racial slur] on his very first day"); *id.* at ¶ 35 ("the Company's workplace was infested with imagery on slavery, lynching, and the Jim Crow era"); *id.* at ¶ 95 (alleging the Company sent Plaintiff home for three days without pay ("Send that *black* guy home for three days—no pay!") after Plaintiff broke the Company's glass).

The undersigned finds the FAC sets forth sufficient allegations to state a claim for race discrimination under both federal and state law. *See Vamper*, 14 F. Supp. 2d at 1304; *Borgella*,

2022 WL 2104215, at *3. As such, Mr. Malone has demonstrated that he should be permitted to offer evidence to support his claims based on race discrimination. *See Twombly*, 550 U.S. at 563 n.8.

Accordingly, the undersigned recommends that Defendants' Partial Motion to Dismiss Counts I, II, and III against the Company[2] be denied.

### B.   Retaliation Claims Against The Company (Counts VII, VIII, and IX)

The undersigned next considers the retaliation claims against the Company: Count VII, alleging violation of Title VII; Count VIII, alleging violation of Section 1981; and Count IX, alleging violation of the FCRA. Title VII, Section 1981, and the FCRA all prohibit employers from retaliating against employees for opposing any unlawful employment practice, making a charge of discrimination, or participating in a discrimination investigation or proceeding. *See* 42 U.S.C. § 2000e–3(a); Fla. Stat. § 760.10(7); *see also Butler v. Ala. Dep't of Transp.,* 536 F.3d 1209, 1212–13 (11th Cir. 2008) (noting that the elements of a retaliation claim are the same under Section 1981 and Title VII).

To state a *prima facie* claim of retaliation, a plaintiff must allege that he or she (1) participated in statutorily protected activity; (2) suffered a materially adverse employment action; and (3) there is some causal relationship between the protected activity and the adverse action. *Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, 488–89 (11th Cir. 2015). The plaintiff carries the initial burden of establishing a *prima facie* case. *Brush v. Sears Holdings Corp.,* 466 F. App'x 781, 785–86 (11th Cir. 2012) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Importantly, although a plaintiff must allege the necessary *prima facie* elements of an employment discrimination or retaliation claim, at the pleading stage, a

---

[2] The undersigned addresses Count II as to Mr. Senaris, individually, below.

plaintiff need not fully satisfy the *McDonnell Douglas* framework in order to survive a Rule 12(b)(6) Motion. *Zachary v. Comprehensive Health Mgmt., Inc.*, No. 12-cv-530, 2012 WL 3264899, at *2 (M.D. Fla. Aug. 9, 2012) (citing *Swierkiewicz*, 534 U.S. at 511). Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." *Swierkiewicz*, 534 U.S. at 511; *see also Surtain v. Hamlin Terrance Found.*, 789 F.03d 1239, 1246 (11th Cir. 2015) ("*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement."). As the Supreme Court explained, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case . . . . Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 511.

With the foregoing in mind, the undersigned considers whether Mr. Malone has sufficiently pled *prima facie* claims of retaliation in Counts VII, VIII, and IX. As discussed below, the undersigned finds the retaliation claims in the FAC are not adequately pled because they fail to satisfy the adverse employment action requirement.

### i.   *Protected Activity*

The undersigned first addresses whether the FAC sets forth sufficient allegations that Mr. Malone was engaged in statutorily protected activity.

Title VII's anti-retaliation provision prohibits retaliation when an employee "has opposed any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Mr. Malone's retaliation claims are

premised on the "opposition clause." Specifically, Mr. Malone complains he suffered adverse employment actions after he opposed or complained of racial discrimination.

To establish statutorily protected activity under Title VII's opposition clause, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). He must show both that he subjectively believed that Defendants engaged in unlawful discrimination and that "his belief was objectively reasonable in light of the facts and record present." *Id.*

In the FAC, Mr. Malone alleges he engaged in statutorily protected conduct by "complaining about the Company's discriminatory employment practices, which he reasonably believed were motivated by discriminatory animus because of [his] race and color." FAC at ¶ 207–09; *see also id.* at ¶ 42 (alleging Plaintiff complained "upwards of ten times per week" to "different supervisors regarding a workplace permeated with racial discrimination"). More specifically, Mr. Malone alleges he engaged in protected activity in late October 2020 when he complained to his immediate supervisor, Mr. Luis, "that his coworkers were calling him [an offensive racial slur] every day," and showed Mr. Luis "the lynching images" Mr. Malone found in the workplace. *Id.* at ¶ 208. Mr. Malone also alleges he engaged in protected activity when he complained to Mr. Luis that "he was hired as a forklift operator but was never allowed to operate the forklifts" and that "he was still being paid $13 [per] hour after the 90-day [probationary] period, while the Company was paying similarly situated employees $15 [per] hour after the [probationary] period." *Id.* at ¶ 209.

These allegations sufficiently demonstrate that Mr. Malone subjectively believed that Defendants engaged in unlawful discrimination about which he complained.

Moreover, as explained above, the undersigned finds that Mr. Malone has adequately pled race discrimination claims under Counts I, II, and III for disparate treatment, and as such, finds it was objectively reasonable for him to believe that the Company was engaged in an unlawful employment practice. Therefore, the FAC sufficiently alleges that Mr. Malone engaged in protected activity.

### ii. *Adverse Employment Action*

On the other hand, the allegations in the FAC regarding whether Mr. Malone suffered an adverse employment action are inadequate. The Eleventh Circuit has specified that "adverse employment actions include 'tangible employment actions,' which are those actions 'that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020)). Mistreatment based on retaliation for protected conduct (*i.e.*, making or supporting a charge of discrimination) "is actionable whether or not the mistreatment rises to the level of a tangible employment action, but only if the mistreatment 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Monaghan*, 955 F.3d at 861 (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In support of his retaliation claims, Mr. Malone alleges he experienced adverse employment actions because his immediate supervisor, Mr. Luis (1) "took no corrective action after [Mr. Malone] complained that his coworkers insisted on referring to him [using

14

an offensive a racial slur]; (2) "never reported [Mr. Malone's] discrimination complaints . . . to any Company supervisors, executives, or H.R."; (3) "did not allow [Mr. Malone] to operate the forklifts," which he was certified to do, and instead "continued assigning non-certified, Hispanic employees to operate the forklifts"; and (4) "never addressed [Mr. Malone's] pay disparity even though he understood the Company was paying similarly situated Hispanic and/or Cuban employees $15 [per] hour after the 90-day [probationary] period." *Id.* at ¶ 210; *see also id.* at ¶¶ 212–14.

Overall, the retaliation claims in the FAC are based on the Company's alleged *inactions*.[3] But the alleged failure to take corrective action does not constitute a materially adverse employment action sufficient to support a retaliation claim. *See Pritchett v. Heat Transfer Prods. Grp., LLC*, No. 20-cv-01733, 2021 WL 2042950, at *5 (N.D. Ala. May 21, 2021). Mr. Malone does not cite, and the undersigned is unaware of, any cases supporting a Title VII retaliation claim based solely on an employer purportedly failing to respond to protected activity, like employee complaints. *Id.* at *6. To the contrary, courts in this Circuit have held that a plaintiff "cannot rely on [an employer's] failure to take action against another employee to show that he was subject to an adverse employment action." *Wesolowski v. Napolitano*, 2 F. Supp. 3d 1318, 1348 (S.D. Ga. 2014) (citing *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010)); *see also Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149–50 (11th Cir. 2021) ("[E]ven if [the defendant employer] ignored [the employee's] human resources complaint, that shows only a failure to act, not a material

---

[3] Notably, the adverse employment actions that support Mr. Malone's discrimination claims (*i.e.*, lower pay, being sent home without pay, severe disciplinary actions) are not alleged to have occurred or worsened as the result of his protected activity.

adverse action sufficient to make out a retaliation claim" (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002)).

Nor does Mr. Malone allege that he was subjected to further mistreatment after reporting the Company's alleged discriminatory employment practices. To be sure, Mr. Malone alleges the mistreatment caused him "stress, anxiety, anger and fear of going to work every day," and "forced" him "into an existential crisis" to the point that he "contemplated killing himself." *Id.* at ¶¶ 46–47. These allegations, however, are insufficient to show that the Company's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.

In short, the FAC fails to allege that Mr. Malone suffered adverse employment actions as a result of his having engaged in protected activity, and therefore, his retaliation claims fail as a matter of law. Because the FAC fails to allege adverse employment actions sufficient to satisfy the second element of a *prima facie* claim of retaliation, the Court need not reach the third element or whether any alleged adverse employment action was causally linked to the protected activity.

Accordingly, the undersigned recommends that Defendants' Partial Motion to Dismiss Counts VII, VIII, and IX be granted.

**C. Retaliatory Hostile Work Environment Claims Against The Company (Counts X and XI)**

In Counts X and XI of the FAC, Mr. Malone alleges retaliatory hostile work environment against the Company under Title VII and the FCRA, respectively. FAC at ¶¶ 260–77. Title VII prohibits employers from creating a hostile work environment in retaliation for an employee engaging in protected activity. *Tonkyro v. Sec., Dep't of Veteran Affairs*, 995 F.3d 828, 835–36 (11th Cir. 2021).

As a threshold matter, Mr. Malone's retaliatory hostile work environment claims are cognizable under Title VII, the FCRA, and the ADA. *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012) (joining every other sister circuit in recognizing a retaliatory hostile work environment claim under Title VII); *see also Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 WL 203020, at *13 (11th Cir. Jan 24, 2022) (holding that plaintiff's retaliatory hostile work environment claim is cognizable under the ADA). Therefore, the pre-*Gowski* cases cited by Defendants in support of their assertion that this Circuit has yet to recognize a cause of action for retaliatory hostile work environment are no longer good law. *Gowski*, 682 F.3d at 1311–12. In *Monaghan*, the Eleventh Circuit clarified that the "sufficiently severe or pervasive" standard used to analyze mistreatment based on race or other prohibited characteristics is inconsistent with the Supreme Court's decision in *Burlington Northern*, which set out a different standard for retaliation claims. 955 F.3d at 861. To state a claim for retaliatory hostile work environment, a plaintiff must show that the conduct complained of "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008)).

The Company argues that the FAC's retaliatory hostile work environment claims should be dismissed as duplicative of Counts IV and VI (*i.e.*, hostile work environment claims). Motion at 13–14. The undersigned disagrees. Counts X and XI are instead duplicative of the retaliation claims asserted in Counts VII and IX. *Compare* FAC at ¶¶ 260–277 *with* ¶¶ 206–222, 241–259. A retaliatory hostile work environment claim is a type of retaliation claim. *See Burlington*, 548 U.S. at 64 (noting retaliation claims under Title VII can be based on a hostile work environment); *see also Debe v. State Farm Mutual Auto. Ins. Co.*, 860

F. App'x 637, 640 (11th Cir. 2021) ("We analyze retaliatory hostile work environment or retaliatory harassment claims like retaliation claims[.]").

The allegations in Counts X and XI of the FAC restate the same factual allegations stated in Counts VII and IX. For example, in Counts X and XI, Mr. Malone alleges he engaged in protected activity by complaining about discriminatory employment practices to several of his supervisors during the Fall of 2020. FAC at ¶ 262. He further alleges that after voicing his complaints, the Company "never investigated the conduct." *Id.* at ¶¶ 263–64. Similarly, in Counts VII and IX, Mr. Malone alleges he "engaged in protected activity by complaining about the Company's discriminatory employment practices" and that the Company failed to take any corrective action. *Id.* at ¶¶ 207, 219.

Because the retaliatory hostile work environment claims in Counts X and XI are not distinct from the retaliation claims in Counts VII and IX of the FAC, the undersigned finds that Counts X and XI should be dismissed as duplicative. Even if they were not duplicative of Counts VII and IX, the undersigned finds that the retaliatory hostile work environment claims in Counts X and XI are also subject to dismissal, like Counts VII and IX, for failure to allege a materially adverse employment action.

Accordingly, the undersigned recommends that Defendants' Partial Motion to Dismiss be granted as to Counts X and XI of the FAC.

### D.   Disability Retaliation Claims Against The Company (Counts XII and XIII)

In Counts XII and XIII, Mr. Malone asserts two separate retaliation claims against the Company based on disability[4] pursuant to the ADA and FCRA. FAC at ¶¶ 278–93. The

---

[4] Although these Counts are labeled as "Hostile Work Environment – Disability," both Counts describe the elements of a retaliation claim—not a hostile work environment claim— thus, the undersigned will consider Counts XII and XIII as retaliatory hostile work environment claims based on disability. *See* FAC at ¶¶ 284, 292.

Company's sole argument for dismissal of these Counts is that the Eleventh Circuit has not recognized a claim for retaliatory hostile work environment. Motion at 13. However, as noted above, the Eleventh Circuit does recognize a cause of action for retaliatory hostile work environment. *See Gowski*, 682 F.3d at 1311–12.

Like Title VII, the ADA prohibits retaliation against an individual "because such individual has opposed any act or practice made unlawful [by the Act] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the Act. 42 U.S.C. § 12203(a). The elements of a *prima facie* case of retaliation under the ADA are the same as those under Title VII. A plaintiff must show that: (1) he engaged in a statutorily protected expression, (2) he suffered an adverse action, and (3) there was a causal link between the two. *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

The undersigned finds that Mr. Malone has established a *prima facie* case of retaliation in the FAC based on disability under both the ADA and FCRA. First, Mr. Malone alleges he engaged in conduct that is statutorily protected when he "requested a reasonable accommodation following his industrial accident and injury, and subsequent diagnosis of a sprained lumbar spine" and told a person in the Company's H.R. department that his treating physician "had placed a weight-lifting restriction as a result of his lumbar spine strain." FAC at ¶ 279. Next, Mr. Malone alleges he suffered adverse actions when the Company (1) "ignored the weight restrictions and insisted on requiring him to conduct his regular activities—lifting, pushing, and pulling more than 7-10 pounds" and (2) threatened him by saying, "Either do what you're told or you won't have a job." *Id.* at ¶ 280.

Although a threat of termination, without more, does not constitute an adverse employment action, as required to establish a retaliation claim under the ADA, *Williams-*

*Evans*, 843 F. App'x at 149, Mr. Malone alleges the Company required him to engage in lifting, pushing, or pulling more than ten pounds despite the physical limitations imposed on him by his treating physician. FAC at ¶ 281. "Where an employee is reassigned to a job that is more physically strenuous than the employee's previous role, that reassignment can constitute an adverse employment action." *Dixon v. Nat'l Sec. of Ala., Inc.*, No. 18-cv-00013, 2020 WL 2312816, at *8 (M.D. Ala. May 8, 2020); *see also Sharpe v. Glob. Sec. Int'l*, 766 F. Supp. 2d 1272, 1293 (S.D. Ala. 2011) (employee's reassignment involving "a substantial increase in physical demands" met standard for adverse employment action); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077–78 (11th Cir. 1996) (reassignment to post where tasks were difficult for a person of plaintiff's condition to perform constituted an adverse employment action).

To demonstrate the requisite causal connection, a plaintiff must generally establish that the employer was aware of the protected activity at the time it took the adverse action. *Adams v. City of Montgomery*, 569 F. App'x 769, 774 (11th Cir. 2014). Once a plaintiff has established the employer's awareness of the protected activity, he can meet the causation element by showing "close temporal proximity between the protected activity and the employer's adverse action." *Id.* Here, Mr. Malone alleges the Company was aware of the disability and the request for an accommodation, [FAC at ¶ 283], and that he experienced the adverse actions (*i.e.*, being required to lift above the physical limitations) after he requested the accommodation. *Id.* at ¶¶ 282–83. The temporal proximity between the protected activity and the adverse action is sufficiently close to support an inference that the two events are not "wholly unrelated." *Debe*, 860 F. App'x at 639 ("One way the plaintiff can establish that the adverse action and protected activity were not "wholly unrelated" is by showing a close

temporal proximity between the employer's discovery of the protected activity and the adverse action."). Mr. Malone alleges his industrial accident occurred in February 2021, and the following month, in March 2021, his treating physician placed the physical limitations on him that led to his request for an accommodation (*i.e.*, the statutorily protected activity). FAC at ¶¶ 58, 281–82. Mr. Malone further alleges that the subsequent alleged adverse action by the Company in requiring him "to work through the limitations" was immediate. *Id.* Thus, the adverse action was sufficiently close in time to the protected activity. *See Debe*, 860 F. App'x at 639–40 (noting a "three-to-four-month delay is too long, while a one-month gap may satisfy the test") (internal citations omitted).

Accordingly, the undersigned finds that the FAC adequately pleads a retaliatory hostile work environment claim based upon a disability under both the ADA and FCRA,[5] and recommends that Defendants' Partial Motion to Dismiss be denied as to Counts XII and XIII.

### E.   Individual Section 1981 Claims (Counts II, V, and VIII)

The undersigned next turns to the FAC's claims against Mr. Senaris, individually. In Counts II, V, and VIII, Mr. Malone asserts discrimination, hostile work environment, and retaliation claims pursuant to Title 42, United States Code, Section 1981. *See* FAC at ¶¶ 99–112; 146–75; 223–39. Mr. Senaris argues these Counts should be dismissed because the allegations are insufficient to state a claim for personal liability against him. Motion at 4–6. Specifically, Mr. Senaris asserts that he may not be held personally liable because Mr. Malone does not allege that he was personally involved in the alleged mistreatment. *Id.* at 5. Whether

---

[5] Disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

Mr. Senaris may be held individually liable under Section 1981 based on the allegations in the FAC is a threshold question.

While only employers—not individuals—can be held liable under Title VII, individuals may be held liable under Section 1981. *See, e.g.*, *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176–77 (11th Cir. 2003) (noting that Section 1981 provides for individual liability); *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000) ("Contrary to Title VII, individual employees can be held liable for discrimination under § 1981."); *see also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975) (holding that the remedies available under Title VII and Section 1981 are related and "directed to most of the same ends"). Individual liability under Section 1981 requires "personal involvement" in the alleged discrimination and cannot be imposed vicariously. *Cason Enters, Inc. v. Metropolitan Dade Cnty.*, 20 F. Supp. 2d 1331, 1337 (S.D. Fla. 1998) (Graham, J.). That is, a plaintiff must demonstrate "some affirmative link to causally connect the actor with the discriminatory action." *Wallace v. DM Customs, Inc.*, No. 04-cv-115, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006).

The Eleventh Circuit has yet to directly address individual liability under Section 1981. *Okwan v. Emory Healthcare, Inc.*, No. 20-11467, 2021 WL 4099236, at *1, n.1 (11th Cir. Sept. 9, 2021) ("We note that although we have never expressly addressed the question of whether an individual can be held personally liable under § 1981, our holdings in past cases have suggested that such liability may exist."). Nevertheless, in *Burstein v. Emtel, Inc.*, the Court suggested that such liability may arise because of an individual's interference or participation in the alleged wrongdoing or mistreatment. 137 F. App'x 205, 208 (11th Cir. 2005) (finding that an individual who did not participate in a decision not to offer an employment contract

to the plaintiff-employee was not liable under Section 1981 because he did not participate in the decision).

### i.    Disparate Treatment Claim Against Senaris (Count II)

In Count II, Mr. Malone asserts disparate treatment in pay and disciplinary practices based on his race against Mr. Senaris in violation of Section 1981. FAC at ¶¶ 99–112. Mr. Malone alleges that Mr. Senaris was personally involved because he "witnessed [Mr. Malone's] suspension for three days without pay . . . and did not intervene to prevent same." *Id.* at ¶ 109. Mr. Malone also alleges that Mr. Senaris "fail[ed] to take any corrective action after [Mr. Malone] showed him the racist imagery in the restroom." *Id.* The allegations that Mr. Senaris witnessed Mr. Malone's suspension without pay and failed to take corrective action in response to the racist images are not sufficient to satisfy the "personal involvement" requirement under Section 1981.

Mr. Malone does not allege that Mr. Senaris personally requested Mr. Malone's suspension without pay or set his hourly rate of pay or made the decision to pay the other two alleged comparators at $15 per hour while paying Mr. Malone $13 per hour. There are no factual allegations in the FAC connecting Mr. Senaris to any decision-making about Mr. Malone's job responsibilities, pay grade, or disciplinary actions beyond Mr. Senaris's status as president of the Company. The fact that Mr. Senaris may have been aware of the alleged disparate treatment, without more, is insufficient to establish his personal involvement in such conduct or mistreatment. *See, e.g.*, *Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 09-cv-298, 2011 WL 13157372, at *6 (M.D. Fla. Oct. 14, 2011) (citing cases where individual defendant's mere awareness, failure to properly supervise, and failure to take corrective measures were insufficient to state claim for individual liability under Section 1981).

Because the FAC fails to allege sufficient facts connecting Mr. Senaris to the alleged discriminatory conduct, the FAC's claims against Mr. Senaris, individually, under Section 1981, fail. Accordingly, the undersigned recommends that Defendants' Partial Motion to Dismiss Count II as to Mr. Senaris, individually, be granted.

### ii.   Hostile Work Environment Claim Against Mr. Senaris (Count V)

In Count V of the FAC, Mr. Malone asserts a hostile work environment claim against Mr. Senaris, individually, pursuant to Section 1981. FAC at ¶¶ 146–75. Mr. Malone alleges he was subjected to a hostile work environment with "relentless humiliation, intimidation, and ridicule, because of his race." *Id.* at ¶ 147. Mr. Malone alleges that on one occasion on Thanksgiving Day of 2020, he found a derogatory, racist remark written on the bathroom mirror and complained to Mr. Senaris about it. *Id.* at ¶ 163. Mr. Senaris allegedly "saw the hate message, took a photo, shut the bathroom down, had it painted over, and failed to initiate any investigation of any kind." *Id.* Based on this occurrence, Mr. Malone alleges Mr. Senaris violated Section 1981 by "failing to take prompt corrective action upon actual notice of [the] discriminatory images in the Company's workplace." *Id.* at ¶ 172. As noted above, such allegations of inaction, without more, are insufficient to impose individual liability upon Mr. Senaris for the alleged mistreatment. *See Moore*, 2011 WL 13157372, at *6. *Cf. Douglas v. Cruise Yacht Op. Co.*, No. 21-cv-23980, 2022 WL 1719312, at *7 (S.D. Fla. May 26, 2022) (Bloom, J.) (finding first amended complaint contained sufficient allegations of each of the individual defendants' personal involvement to establish Section 1981 individual liability where plaintiffs alleged the individual defendants directed others to reprimand and retaliate against plaintiffs, but noting that "[p]ersonal involvement may be satisfied by proof that the individual had knowledge of the alleged acts of discrimination and failed to remedy or prevent them").

Here, the FAC does not allege that Mr. Senaris was "personally involved" in creating the hate message or that he participated in any of the alleged discriminatory acts. In fact, based on the allegations, it appears Mr. Senaris promptly acted to remove the hate message from the workplace once it was shown to him.

Therefore, the undersigned finds that the hostile work environment claim against Mr. Senaris, individually, also fails, and recommends that Defendants' Partial Motion to Dismiss Count V as to Mr. Senaris be granted.

### iii.    Retaliation Claim Against Mr. Senaris (Count VIII)

As set forth above, Count VIII of the FAC, alleging retaliation based on Mr. Malone's complaints about race-based discrimination, is inadequately pled because it fails to allege an adverse employment action as needed to establish a *prima facie* retaliation claim. Likewise, the FAC does not demonstrate that Mr. Senaris may be held individually liable in Count VIII for the same reason.

### IV.    RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 13] be **GRANTED IN PART and DENIED IN PART** as follows:

a)    **DENIED** as to Counts I, II, III, V, XII, and XIII as against the Company;

b)    **GRANTED** as to Counts VII, VIII, IX, X, and XI as against both Defendants; and

c)    **GRANTED** as to Counts II and V as against Mr. Senaris, individually.

The undersigned further recommends that Defendants' request for an enlargement of time within which to file an Answer regarding Counts IV, VI, and XIV until the Answer as to any claims remaining after the Court's determination of the Motion be **GRANTED**.

With regard to Plaintiff's request for leave to amend to correct any pleading deficiencies found by the Court, the undersigned recommends that the Order granting in part the partial Motion to Dismiss be without prejudice and that the Court direct Plaintiff to comply with Federal Rule of Civil Procedure 15(a)(2) regarding requests for leave to amend.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 15<u>th</u> day of July 2022.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable James Lawrence King
        Counsel of Record

26